UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
In Re:                                        :
                                              :   Case No. 10-11809 (REG)
PEDRO LIMA,                                   :
                                              :   Chapter 7
      Debtor.                                :
                                              :
                                              :
---------------------------------------------------------- x
                                              :
TRACY HOPE DAVIS, as the UNITED               :   Adv. Proceeding No. 10-
STATES TRUSTEE,                               :
      Plaintiff,                             :
                                              :
-against-                                     :
                                              :
                                              :
PEDRO LIMA,                                   :
      Defendant.                             :
---------------------------------------------------------- x

### COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE
### PURSUANT TO 11 U.S.C. §§ 727(a)(4), AND 727(a)(5)

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"), by and through the undersigned attorney, as and for her complaint objecting to the discharge of Pedro Lima (the "Debtor"), pursuant to 11 U.S.C. §§ 727(a)(4) and 727(a)(5), respectfully alleges as follows:

### PARTIES

1. The Plaintiff, Tracy Hope Davis, is the United States Trustee for Region 2, with offices located at 33 Whitehall Street, 21st Floor, New York, New York 10004.

2. The Defendant is the Debtor in the above-captioned bankruptcy case and, upon information and belief, is an individual residing at 1 West St., 2229, New York, New York 10004.

## JURISDICTION, VENUE AND STATUTORY PREDICATES FOR RELIEF

3. Plaintiff, Tracy Hope Davis, is the United States Trustee for Region 2. United States Trustees are officials of the Department of Justice appointed by the Attorney General to supervise the administration of bankruptcy cases and trustees. See 28 U.S.C. §§ 581-589. The United States Trustee possesses standing to pursue her complaint under 11 U.S.C. § 307 and § 727(c)(1).

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.).

5. Venue is proper pursuant to 28 U.S.C. § 1409(a).

6. This cause of action constitutes a core proceeding as defined by 28 U.S.C. § 157(b)(2)(J).

7. The statutory and other predicates for the relief sought in this matter are 11 U.S.C. §§ 105(a), 541, 727 and 550 and Rules 4004(a) and 7001 of the Federal Rules of Bankruptcy Procedure.

8. This complaint initiates an adversary proceeding within the meaning of Fed. R. Bankr. P. 7001(4).

## ALLEGATIONS COMMON TO ALL COUNTS

### A. General Background

9. On April 6, 2010 (the "Filing Date"), the Debtor, represented by attorney David Hamilton, Esq., commenced this case with the filing of a voluntary petition, along with schedules and a statement of financial affairs (the "SOFA"), under Chapter 7 of the Bankruptcy Code (the "Petition"). See Voluntary Petition, Schedules, SOFA, ECF Doc. No. 1.

10. The Debtor signed his Petition, Schedules, and SOFA under the penalty of perjury. See

ECF Doc. No. 1.

11. Ian J. Gazes, Esq. (the "Trustee"), was appointed as interim trustee of the estate on April 7, 2010, and then, in accord with 11 U.S.C. § 702(d), became the permanent trustee.

12. Pursuant to a So Ordered Stipulation signed on October 8, 2010, the United States Trustee's last date to file an action seeking to deny the Debtor's discharge is November 15, 2010. See ECF Doc. No. 17.

13. The Trustee conducted an examination of the Debtor under oath in accordance with 11 U.S.C. § 341. The meeting of creditors pursuant to 11 U.S.C. § 341(a) was first scheduled for May 11, 2010 (the "341 Meeting"), and was conducted on that date.

### B. The Debtor's Schedules and Statement of Financial Affairs

(a) Assets

14. The Debtor listed in his bankruptcy schedules assets with a total value of $7,347. See Summary of Schedules, ECF Doc. No. 1.

15. The assets listed by the Debtor primarily consist of two security deposits aggregating $4,197, and household goods and furnishings aggregating $1,750. See Schedule B, ECF Doc. No. 1.

16. On his Schedule B, the Debtor did not list any interests in incorporated and unincorporated businesses, partnerships, or joint ventures. See Schedule B, ECF Doc. No. 1.

17. On his Schedule B, the Debtor did not list any accounts receivable. See Schedule B, ECF Doc. No. 1.

18. On his Schedule B, the Debtor did not list any licenses, franchises, and other general intangibles. See Schedule B, ECF Doc. No. 1.

(b) <u>Liabilities</u>

19. According to his Summary of Schedules, the Debtor has $131,926.26 in unsecured liabilities (non-priority only), $6,500 of priority unsecured liabilities, and no secured liabilities. <u>See</u> Summary of Schedules, ECF Doc. No. 1.

20. According to the Debtor's Schedule F, the Debtor's non-priority unsecured debts of $131,926.26 are owed largely to credit card companies and to a line of credit the Debtor had guaranteed. <u>See</u> Schedule F, ECF Doc. No. 1.

(c) <u>Income, Expenses, Household Size, and Employment</u>

21. In his Schedule I, the Debtor averred that he is single with no dependents. <u>See</u> Schedule I, ECF Doc. No. 1.

22. According to the Debtor's Schedule I, he has been employed as an instructor at Educational Management Corp. ("EMC") for four years. <u>See</u> Schedule I, ECF Doc. No. 1.

23. According to the Debtor's Schedule I, the Debtor's employment at EMC is his sole source of income. <u>See</u> Schedule I, ECF Doc. No. 1.

24. According to the Debtor's Schedule I, he earns $9,011.54 per month in gross income from his employment at EMC. <u>See</u> Schedule I, ECF Doc. No. 1.

25. In response to question 1 of the SOFA, the Debtor averred that his employment income in 2008 aggregated $104,888. <u>See</u> SOFA at question 1, ECF Doc. No. 1.

26. In response to question 1 of the SOFA, the Debtor averred that his employment income in 2009 aggregated $109,399.81. <u>See</u> SOFA at question 1, ECF Doc. No. 1.

27. In response to question 1 of the SOFA, the Debtor averred that his employment income in 2010 (as of the Filing Date) aggregated $3,132. <u>See</u> SOFA at question 1, ECF Doc. No. 1.

28. In response to question 2 of the SOFA, the Debtor averred that he had no income from

sources other than employment or operation of business. See SOFA at question 2, ECF Doc. No. 1.

29. In his Chapter 7 Statement of Current Monthly Income and Means Test Calculation – Form 22A (the "Means Test Form"), the Debtor averred that his sole source of income during the six months preceding the Filing Date were gross wages, salary, tips, bonuses, overtime, commissions aggregating to $9,011.54 per month. See Means Test Form, ECF Doc. No. 2.

30. In his Schedule J, the Debtor averred that his monthly expenses aggregate $4,771.50. See Schedule J, ECF Doc. No. 1.

31. In his Schedule J, the Debtor averred that he has a monthly deficit of ($291.47). See Schedule J, ECF Doc. No. 1.

32. In his Schedule J, the Debtor averred that his monthly entertainment expenses aggregate to $175. See Schedule J, ECF Doc. No. 1.

33. In his Schedule J, the Debtor averred that his monthly transportation expenses aggregate to $200. See Schedule J, ECF Doc. No. 1.

34. In his Schedule J, the Debtor averred that his monthly expenses on gifts aggregate to $125. See Schedule J, ECF Doc. No. 1.

35. In his Schedule J, the Debtor averred that his monthly tax payments aggregate to $500. See Schedule J, ECF Doc. No. 1.

36. In his Schedule J, the Debtor averred that his monthly expenses on grooming aggregate $100. See Schedule J, ECF Doc. No. 1.

37. In his Schedule J, the Debtor averred that his monthly expenses for psychiatric and psychotherapeutic treatment and for prescriptions aggregate $640. See Schedule J, ECF Doc. No. 1.

38. In his Schedule J, the Debtor averred that his monthly charitable contribution expenses aggregate to $0. See Schedule J, ECF Doc. No. 1.

39. In his Schedule J, the Debtor averred that his monthly telephone, cable TV, and Internet expenses aggregate to $340. See Schedule J, ECF Doc. No. 1.

      (d)      Transfers and Gifts

40. In response to question 3 of the SOFA, the Debtor disclosed no payments or transfers to any creditors. See SOFA at question 3, ECF Doc. No. 1.

41. In response to question 10 of the SOFA, the Debtor averred that he had not transferred any property outside the ordinary course of their financial affairs within the two years immediately preceding the Filing Date. See SOFA at question 10, ECF Doc. No. 1.

42. In response to question 7 of the SOFA, the Debtor marked the box labeled "none," averring that he had made no gifts or charitable contributions within one year preceding the Filing Date "except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient." See SOFA at question 10, ECF Doc. No. 1.

      (e)      Business Ownership and Management

43. In response to question 18 of the SOFA, the Debtor disclosed that within six years preceding the Filing Date he either owned interests in or served as an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor in the following two business entities or organizations: Pedro Lima Design ("Design") and New York Urban Stone ("Urban Stone"). See SOFA at Question 18, ECF Doc. No. 1.

44. In response to question 18 of the SOFA, the Debtor listed no business entities or organizations other than Design and Urban Stone. See SOFA at Question 18, ECF Doc. No. 1.

45. According to question 18 of the SOFA, Design provided interior design services and operated between May 2007 and December 2009. See SOFA at Question 18, ECF Doc. No. 1.

46. According to question 18 of the SOFA, Urban Stone provides engages in sales of stone and has been operating since January 2009. See SOFA at Question 18, ECF Doc. No. 1.

### C. United States Trustee's Investigation of the Debtor's Case

47. By letter dated May 11, 2010 (the "May 11 Letter"), the Trustee requested that the Debtor provide to the Trustee and the United States Trustee copies of his credit card statements for three years preceding the Filing Date, and receipts or bills for "other" expenses and business expenses. A copy of the May 11 Letter is annexed hereto as Exhibit A.

(a) Credit Card Statements

48. In response to the May 11 Letter, the Debtor provided to the United States Trustee copies of his credit card statements for the past three years.

49. The credit card statements provided by the Debtor, list, among others, the following transactions:

A. **Credit Card Provider: American Express**
**Account Number (Last Four Digits): 1008**
**Account Holder(s): Pedro A Lima**

| Transaction Date | Transaction Description | Amount |
|---|---|---|
| 08/12/07 | NY TENO, INC. NEW YORK NY JEWELRY / WATCH / SILVRWR | $688.18 |
| 7/22/08 (statement closing date; original date cut off on the statement Debtor provided) | PAYPAL *ARGANBOUTIQ (transaction by Peter T. Biertzer) | $447.18 |
| 9/15/08 | PAYPAL *ARGANBOUTIQ (transaction by Peter T. Biertzer) | $1,085.61 |
| 11/24/08 | AIRTRAN AIRWAYS ATLANTA GA (transaction by Peter T. Biertzer) | $251.50 |

B.  **Credit Card Provider: American Express**
    **Account Number (Last Four Digits): 1001**
    **Account Holder(s): Pedro Alejandro Lima**

| Transaction Date | Transaction Description | Amount |
| --- | --- | --- |
| 7/05/07 | ERMENGILDO ZEGNA CENTRAL VALLEY NY (transaction by Peter Biertzer) | $337.91 |
| 4/03/08 | MERCANTILLA LLC CA (transaction by Peter Biertzer) | $388.99 |

C.  **Credit Card Provider: American Express**
    **Account Number (Last Four Digits): 2004**
    **Account Holder(s): Pedro Lima; Pedro Lima Design**

| Transaction Date | Transaction Description | Amount |
| --- | --- | --- |
| 5/18/07 | CDW GOVERNMENT, INC. VERNON HILLS, IL (transaction by Peter T. Biertzer) | $525.74 |
| 5/25/07 | HP HOME STORE CA (transaction by Peter T. Biertzer) | $428.06 |
| 7/05/07 | GIANNI VERSACE CENTRAL VALLEY NY | $162.19 |
| 8/10/07 | LAICALE NEW YORK NY HAIR SALON | $292.98 |
| 6/6/08 | AIR CANADA CALGARY CN | $561.18 |
| 7/28/08 | HYATT REGENCY CALGARY AB | Canadian $600.00 (US $601.65) |
| 8/26/08 | AMERICAN CENTURY HOM800-5528227 NC | $1,273.60 |
| 7/19/09 | Hilton Netherland FDCincinnati | $362.72 |
| 7/20/09 | Hilton Netherland FDCincinnati | $583.88 |
| 7/20/09 | Hilton Netherland FDCincinnati | $544.08 |

D.  **Credit Card Provider: Alaska Airlines Visa Signature**
    **Account Number (Last Four Digits): 5261**
    **Account Holder(s): Pedro Lima**

| Transaction Date | Transaction Description | Amount |
| --- | --- | --- |
| 1/08/08 | OR AKIVA IL | New Israeli Shekel 18,700 (US $4,941.87) |
| 1/24/08 | ASSAGEWAREHOUSE.COM GA | $111.09 |

Redacted copies of the statements listing the above-referenced transactions are annexed hereto as Exhibit B.[1]

(b)         August 27, 2010 Examination under Bankruptcy Rule 2004

50. On August 27, 2010, the United States Trustee examined the Debtor under oath pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Rule 2004 Examination"), at which the Debtor agreed to appear voluntarily.

51. A transcript of the Rule 2004 Examination is attached hereto as Exhibit C.

52. At his Rule 2004 Examination, the Debtor testified to the following:

        (i) Involvement with American Society of Interior Designers

A. That, since October 2009, the Debtor has served as president of the American Society of Interior Designers – New York Metro Chapter ("ASID-NY"). See Ex. C at 22-24.

B. That the Debtor's position as president of ASID-NY will end on September 31, 2010. See Ex. C at 25.

C. That, from October 2008 through September 2009, the Debtor served as the president-elect or a vice president of ASID-NY. See Ex. C at 23.

D. That the Debtor has served on the board of ASID-NY since September 2008. See Ex. C at 24.

E. That, apart from expense reimbursements, the Debtor has not received any compensation for his work at ASID-NY. See Ex. C at 24.

F. That, in 2009, the Debtor received expense reimbursements of approximately

---

[1] Exhibit B includes copies of the Debtor's credit card statements. The United States Trustee has not altered them, except to "black out" all but the last four digits of the relevant credit card numbers. Any handwritten notations appearing on the credit card statements were not made by the United States Trustee.

$1,000.00 from ASID-NY. See Ex. C at 28.

G. That, as of the date of the Rule 2004 Examination, the Debtor has received expenses reimbursements of approximately $2,500.00 from ASID-NY. See Ex. C at 28.

H. That he has signed the tax returns of ASID-NY. See Ex. C at 30.

I. That ASID-NY has reimbursed the Debtor for certain charitable donations that he makes. See Ex. C at 28.

J. That ASID-NY has reimbursed the Debtor for certain of his transportation expenses, notably his taxi cab expenses. See Ex. C at 42.

(ii) <u>Gifts to Third Parties and Charitable Contributions</u>

K. That, as of the date of the Rule 2004 Examination, the Debtor spends approximately $75 per month on gifts. See Ex. C at 44.

L. That he may have given gifts to a companion in excess of $200 in value during 2009. See Ex. C at 45.

M. That, between April 2009 and April 2010, the Debtor gave charitable contributions in excess of $100 in value to the Education Legacy Fund. See Ex. C at 45-46.

N. That, during the year preceding the Filing Date, the Debtor gave $250 to the Education Legacy Fund, and was reimbursed by ASID-NY. See Ex. C at 47.

O. That the Debtor gave at least $500 in charitable contributions during the year preceding the Filing Date. See Ex. C at 48-49.

(iii) <u>Design and Urban Stone</u>

P. That neither Design nor Urban Stone are currently operating. See Ex. C at 20.

Q. That Design was dissolved in fall 2009. See Ex. C at 20.

R. That the Debtor is in the process of dissolving Urban Stone. See Ex. C at 21.

S. That Design and Urban Stone have at least $50,000 in uncollected receivables. See Ex. C at 55.

T. That the Debtor was the only shareholder of each of Design and Urban Stone. See Ex. C at 21.

(iv) Household, Living Expenses, and Reimbursements

U. That Peter T. Biertzer ("Biertzer"), the Debtor's companion, currently resides with the Debtor. See Ex. C at 168.

V. That Biertzer has been working as an office manager for a dental practice for the last six years. See Ex. C at 168-69.

W. That Biertzer currently earns $85,000 per year. See Ex. C at 169.

X. That Biertzer and the Debtor evenly split pet care expenses. See Ex. C at 170.

Y. That the Debtor and Biertzer do not share any other expenses listed on the Debtor's Schedule J. See Ex. C at 169-70.

Z. That the Debtor used his credit cards to purchase products, including products from Israel, for Argan Body, a business owned or operated by Biertzer. See Ex. C at 87-92.

AA. That the Debtor authorized Biertzer to use the Debtor's American Express cards (with last four digits of the account numbers being 2004 and 1008). See Ex. C at 109.

BB. That the Debtor was fully reimbursed by ASID-NY for $561.18 plane ticket and a Canadian $600.00 hotel room for a trip to a conference in Canada in June 2008. See Ex. C at 116-18.

CC. That ASID-NY reimbursed the Debtor over $1,490 in the aggregate for the costs of a trip to Cincinnati in July 2009. See Ex. C at 129-30.

DD. That in the fall of 2009, when the Debtor closed down Design, the Debtor threw out

the entire "huge" library of the business, including, stone samples, fabrics, and furniture binders. See Ex. C at 133-34.

        (v) Miscellaneous

EE. That the Debtor has been a tenured professor at the Art Institute of New York since September 2006. See Ex. C at 7.

FF. That the Debtor expects to earn approximately $100,000 from teaching in 2010. See Ex. C at 8.

GG. That the Debtor holds two professional licenses in good standing. See Ex. C at 25-26.

    (c)    Post-Rule 2004 Examination Investigation

53. On October 13, 2010, the Debtor provided to the United States Trustee his 2009 federal income tax return (the "2009 Debtor Return").

54. According to the 2009 Debtor Return, the Debtor owns or has owned an interest in an S corporation entitled Wow Design Properties, Inc. A redacted copy of the relevant excerpt of the 2009 Debtor Return is annexed hereto as Exhibit D.[2]

## COUNT ONE

### Denial of Discharge Under 11 U.S.C. § 727(a)(4)

55. The United States Trustee re-alleges and incorporates the allegations contained in paragraphs 1 through 54.

56. The Court shall grant the Debtor a discharge unless the Debtor "knowingly and fraudulently, in or in connection with the case made a false oath or account." 11 U.S.C. §

---

[2] The United States Trustee has redacted the relevant excerpt of the 2009 Debtor Return in compliance with Rule 9037 of the Federal Rules of Bankruptcy Procedure.

727(a)(4)(A).

57. The Debtor signed the Petition, Schedules, the Means Test Form, and the SOFA under penalty of perjury.

58. The Debtor testified at the Rule 2004 Examination under oath.

(i) <u>Debtor's Inaccurate Disclosures Regarding Ownership and Management of Businesses and Not-for-Profit Organizations</u>

59. In his SOFA, the Debtor averred that during the six years preceding the Filing Date he managed or owned only two business organizations: Design and Urban Stone.

60. In his Schedule B, the Debtor averred that, as of the Filing Date, he owned no interests in incorporated and unincorporated businesses.

61. In his Schedule B, the Debtor averred that he has no accounts receivable.

62. According to the 2009 Debtor Return, the Debtor owns or has owned an interest in Wow Design Properties, Inc., an S corporation.

63. At his Rule 2004 Examination, the Debtor testified that he has served as a president-elect and president of ASID-NY in 2009 and 2010.

64. At his Rule 2004 Examination, the Debtor testified that he has served on the board of ASID-NY since September 2008.

65. At his Rule 2004 Examination, the Debtor testified that Urban Stone and Design, two companies he wholly owns (which either have been or are being dissolved), have uncollected receivables of approximately $50,000.

66. The Debtor's ownership and management of businesses and not-for-profit organizations relate materially to the Debtor's bankruptcy case.

67. The Debtor's interest in the receivables of Urban Stone and Design relates materially to the

Debtor's bankruptcy case.

(ii) <u>Debtor's Inaccurate Disclosures Regarding Debtor's Income, Gifts, and Expenses</u>

68. In his Schedule I, the Debtor averred that he receives no income apart from teaching.

69. In his Means Test Form, the Debtor averred that his aggregate monthly income is the same as that on Schedule I.

70. In his SOFA, the Debtor averred that he had made no gifts in excess of $200 per individual or charitable contributions in excess of $100 per organization during the year preceding the Filing Date.

71. In his Schedule J, the Debtor averred that he has no charitable contribution expenses.

72. At his Rule 2004 Examination, the Debtor testified that he has received expense reimbursements from ASID-NY in 2008, 2009, and 2010, including reimbursements for expenses for hotel and airfare as well as for charitable contributions.

73. At his Rule 2004 Examination, the Debtor testified that ASID-NY reimburses certain of his transportation expenses.

74. At his Rule 2004 Examination, the Debtor testified that he gives approximately $75 in gifts per month.

75. At his Rule 2004 Examination, the Debtor testified that he gave gifts to a companion in excess of $200 in value during 2009.

76. At his Rule 2004 Examination, the Debtor testified that the Debtor used his credit cards to purchase products for a business owned or operated by Biertzer.

77. At his Rule 2004 Examination, the Debtor testified that the Debtor allowed Biertzer to incur charges on the Debtor's American Express cards.

78. At his Rule 2004 Examination, the Debtor testified that, during the year preceding the

Filing Date, he made over $500 in charitable contributions.

79. In his Schedule B, the Debtor averred that he holds no licenses.

80. At his Rule 2004 Examination, the Debtor testified that he holds two professional licenses in good standing.

81. The Debtor's income, expenses, gifts, and charitable contributions relate materially to the Debtor's bankruptcy case.

(iii) <u>Grounds Exist to Deny the Debtor's Discharge</u>

82. By failing to disclose fully, completely, and comprehensively his earnings, income, gifts, charitable contributions, and expenses in his Schedules, Means Test Form, and SOFA, the Debtor knowingly failed to list material items in this bankruptcy Schedules, Means Test Form, and SOFA or, in the alternative, recklessly disregarded his duty to disclose truthfully all the material information required to be disclosed on his Schedules and SOFA.

83. By failing to disclose fully, completely, and comprehensively his ownership of interests in businesses and his officer and board member positions in his Schedules and SOFA, the Debtor knowingly failed to list material items in his bankruptcy Schedules and SOFA or, in the alternative, recklessly disregarded his duty to disclose truthfully all the material information required to be disclosed on his Schedules and SOFA.

84. By failing to disclose fully, completely, and comprehensively his interest in receivables, the Debtor knowingly failed to list material items in his Schedules and SOFA, or, in the alternative, recklessly disregarded his duty to disclose truthfully all the material information required to be disclosed on his Schedules and SOFA.

85. The Debtor's bankruptcy Schedules, Means Test Form, and SOFA are false, misleading, and/or incomplete because they do not contain material information regarding his ownership of

interests in businesses, earnings, sources of income, and expenses.

86. The Debtor knew or should have known that his bankruptcy Schedules, Means Test Form, and SOFA executed under the penalty of perjury, were false, but still caused them to be filed with the Court.

87. The Debtor's false oaths and accounts which appeared in his schedules, Means Test Form, and SOFA and his Rule 2004 Examination warrant denial of the Debtor's discharge under 11 U.S.C. § 727(a)(4).

## COUNT TWO

### Denial of Discharge Under 11 U.S.C. § 727(a)(5)

88. The United States Trustee re-alleges and incorporates the allegations contained in paragraphs 1 through 87.

89. The Bankruptcy Code provides that the Court shall grant the Debtor a discharge unless the Debtor has "failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet [the Debtor's] liabilities." 11 U.S.C. § 727(a)(5).

90. According to the Debtor's Schedules, the Debtor has $131,926.26 in unsecured liabilities (non-priority only), $6,500 of priority unsecured liabilities, and no secured liabilities.

91. In his Means Test Form, the Debtor averred that his annualized current monthly income is $108,138.48.

92. At the Rule 2004 Examination, the Debtor testified that the Debtor expects to earn approximately $100,000 from teaching 2010.

93. At the Rule 2004 Examination, the Debtor testified that the Debtor has been a tenured professor at the Art Institute of New York since September 2006.

94. At the Rule 2004 Examination, the Debtor testified that Urban Stone and Design, two companies he wholly owns (which either have been or are being dissolved), have uncollected receivables of approximately $50,000.

95. At the Rule 2004 Examination, the Debtor testified that the Debtor that the Debtor allowed Biertzer to incur charges on the Debtor's American Express cards.

96. At the Rule 2004 Examination, the Debtor testified that the Debtor used his credit cards to purchase products for Argan Body, a business owned or operated by Biertzer.

97. At the Rule 2004 Examination, the Debtor testified that Biertzer has been working as an office manager for a dental practice for the last six years.

98. At the Rule 2004 Examination, the Debtor testified that Biertzer currently earns $85,000 per year.

99. The Debtor failed to adequately explain why the Debtor and Biertzer lack sufficient income and assets to repay the debts the Debtor incurred on Biertzer's behalf.

100. The Debtor failed to adequately explain why the Debtor and Biertzer lack sufficient income and assets to repay the debts Biertzer incurred on the Debtor's credit cards.

101. The Debtor's failure to explain satisfactorily the deficiency in his income, namely the inability of the Debtor and Biertzer to repay the debts the Debtor incurred on Biertzer's behalf or debts that Biertzer incurred on the Debtor's credit cards, warrants denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(5).

102. The Debtor failed to adequately explain why he has not attempted to collect Design's and Urban Stone's receivables.

103. The Debtor's failure to explain satisfactorily deficiencies in his assets, specifically his failure to explain why he has not collected Design's and Urban Stone's receivables, warrants

94. At the Rule 2004 Examination, the Debtor testified that Urban Stone and Design, two companies he wholly owns (which either have been or are being dissolved), have uncollected receivables of approximately $50,000.

95. At the Rule 2004 Examination, the Debtor testified that the Debtor that the Debtor allowed Biertzer to incur charges on the Debtor's American Express cards.

96. At the Rule 2004 Examination, the Debtor testified that the Debtor used his credit cards to purchase products for Argan Body, a business owned or operated by Biertzer.

97. At the Rule 2004 Examination, the Debtor testified that Biertzer has been working as an office manager for a dental practice for the last six years.

98. At the Rule 2004 Examination, the Debtor testified that Biertzer currently earns $85,000 per year.

99. The Debtor failed to adequately explain why the Debtor and Biertzer lack sufficient income and assets to repay the debts the Debtor incurred on Biertzer's behalf.

100. The Debtor failed to adequately explain why the Debtor and Biertzer lack sufficient income and assets to repay the debts Biertzer incurred on the Debtor's credit cards.

101. The Debtor's failure to explain satisfactorily the deficiency in his income, namely the inability of the Debtor and Biertzer to repay the debts the Debtor incurred on Biertzer's behalf or debts that Biertzer incurred on the Debtor's credit cards, warrants denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(5).

102. The Debtor failed to adequately explain why he has not attempted to collect Design's and Urban Stone's receivables.

103. The Debtor's failure to explain satisfactorily deficiencies in his assets, specifically his failure to explain why he has not collected Design's and Urban Stone's receivables, warrants

denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(5).

WHEREFORE, the United States Trustee respectfully requests the following relief on her complaint:

(a) on Count One, an order denying the Debtor's discharge under 11 U.S.C. § 727(a)(4); and

(b) on Count Two, an order denying the Debtor's discharge under 11 U.S.C. § 727(a)(5); and

(c) for such other and further relief as this Court deems just and proper.

Dated: New York, New York
November 15, 2010

TRACY HOPE DAVIS,
UNITED STATES TRUSTEE

By: /s/ Nazar Khodorovsky
Nazar Khodorovsky
Trial Attorney
33 Whitehall Street, 21st Floor
New York, New York 10004
Tel. No. (212) 510-0500